IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

WILLIAM JEHROD PATE,

    Defendant.

Case No. 2:15-cv-00109
JUDGE GREGORY L. FROST

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion to Suppress Statements, (ECF No. 50), and the Government's Response in Opposition (ECF No. 58).

In his motion, Defendant asks the Court to suppress any and all statements Defendant made to law enforcement agents on the ground that those statements were obtained in violation of Defendant's Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution. Specifically, Defendant argues that he was "in the midst of a low blood sugar attack when he was questioned" by police officers, such that his statements in response to the officers' questions "were not preceded by a knowing, voluntary, and intelligent waiver of his constitutional rights." (ECF No. 50, at PAGEID # 142.)

The Government responds that Special Agent Tom Costanzo ("SA Costanzo") of the Drug Enforcement Administration verbally advised Defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The Government further states that Defendant verbally agreed to waive his *Miranda* rights, after which time he made several statements regarding his ownership of 1.5 kilograms of cocaine, a cocaine press, and multiple firearms. The Government

concludes that Defendant's waiver was voluntary, knowing, and intelligent such that his statements are admissible in the Government's case against him.

The Court held an evidentiary hearing on this issue on August 4, 2015. SA Costanzo testified for the Government. Defendant testified in his own defense.

Having considered the evidence presented, and for the reasons that follow, the Court **DENIES** Defendant's motion to suppress.

   I.   FACTS

The Court makes the following factual findings regarding the events that took place on March 24, 2015. To the extent Defendant's testimony differs from these findings, the Court finds that Defendant is not credible on those points.

On March 24, 2015, a task force approached Defendant's residence located at 2701 Tudor Road, Columbus, Ohio 43209 to execute a search warrant. SA Costanzo was part of that task force and was present for the events that transpired.

Defendant was in the residence at the time officers arrived. Upon hearing officers attempting to gain entry into the home, Defendant exited through the back. Officers observed Defendant fleeing the residence, at which point they pursued and eventually surrounded him. The officers identified themselves as police officers, drew their weapons, and instructed Defendant to get on the ground and put his hands up. Defendant complied. SA Costanzo then handcuffed Defendant and handed him to another officer on the scene. SA Costanzo observed that Defendant was coherent and did not appear to be injured at the time he was handcuffed.

Defendant was placed into another officer's vehicle. SA Costanzo and other members of the task force went back to 2701 Tudor Road, at which time they executed the search warrant and searched the residence.

While SA Costanzo was inside of the residence, Defendant was in a patrol car with another officer and that officer's dog. The other officer's identity is unknown; however, SA Costanzo testified that neither he nor his partner, Trooper Ryan Elsey, were in the car with Defendant at this time.

Unbeknownst to SA Costanzo, Defendant informed the officer in the car that he was going to vomit. The officer opened the car door and Defendant vomited outside of the door. Subsequently, emergency medical personnel from the Columbus Fire Department ("CFD") (who were present with the task force pursuant to policy) approached and spoke with Defendant. A CFD report was prepared (the "Report"). *See* ECF No. 59-3, at PAGEID # 209–10.

The Report references Defendant's blood sugar levels. Defendant testified that he is a diabetic and has been afflicted with diabetes for several years. Defendant takes daily medication to control his blood sugar. On the day of the raid, Defendant had just eaten a meal and taken his diabetes medication before the officers arrived at the residence. The purpose of the medication is to decrease Defendant's blood sugar, which begins to spike after eating a meal. Defendant testified that his blood sugar began to drop after he ran from the home and later vomited on the side of the patrol car.

In the Report, CFD states: "[Defendant] admits to just taking his insulin . . . [w]e gave the [Defendant] oral glucose due to fact [sic] he wasn't going to be able to eat as he normally would." (*Id.* at PAGEID # 210.) CFD further stated that "[Defendant] stated he was ok and just dropped due to the unexpected run." (*Id.*)

The Report indicates that oral glucose paste was administered at 7:12 p.m. The Report further indicates that, at 7:20 p.m., Defendant's blood sugar was 113, his breath was "non-

3

labored," his circulation was "normal," and he was "oriented," among other similar findings. (*Id.*)

According to the Report, CFD "explained to the officer what our findings was [sic], and asked if they wanted us to transport to er, or stay in custody with them, [t]hey continued custody, we explained what symptoms to look for." (*Id.*) SA Costanzo testified that the "officer" referenced in the Report was not him and that he was not aware until several weeks after the raid that CFD had examined or treated Defendant in any way.

As some point following CFD's treatment of Defendant, SA Costanzo and Trooper Elsey exited the residence and approached Defendant (who was still sitting in the patrol car outside of the residence). SA Costanzo introduced himself and Elsey. SA Costanzo then read verbatim from a card entitled "Oral Warnings to be Given to a Subject Prior to Interrogation," (ECF No. 59-2), which states:

> Before we ask you any questions, you must understand:
> - You have the right to remain silent.
> - Anything you say can be used against you in court.
> - You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
> - If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
>
> Do you understand?
>
> Are you willing to answer some questions?

(ECF No. 59-2, at PAGEID # 208.)

When SA Costanzo asked Defendant if he understood, Defendant replied that he did. Defendant again replied affirmatively when asked if he was willing to answer questions.

4

SA Costanzo testified that Defendant appeared calm, coherent, and responsive during this time.  SA Costanzo further testified that neither he nor Elsey threatened Defendant, brandished their weapons, or used physical force on Defendant at any time.  Finally, SA Costanzo testified that Defendant did not at any time request medical attention or indicate that he was experiencing a medical condition.

In response to SA Costanzo's questions, Defendant indicated that the 1.5 kilograms of cocaine in the residence was his, that there was a cocaine press in the basement (also his), and that there were at least two guns in the home.  SA Costanzo testified that Defendant maintained the same demeanor throughout the questioning period and that he did not appear to be in any physical discomfort (other than from being handcuffed) at any time.

At some point during the questioning, Defendant agreed to go into the residence.  Defendant walked into the residence, assisted by SA Costanzo and/or Elsey, and nodded in the direction of the cocaine, the cocaine press, and the firearms.  SA Costanzo testified that Defendant remained calm and cooperative throughout the process.

Defendant, SA Costanzo, and Elsey eventually exited the residence.  At this point Defendant's demeanor changed.  Defendant became hostile, acted upset and offended, and stated that he wanted an attorney.

According to SA Costanzo, Defendant's demeanor changed because he (SA Costanzo) started asking about Defendant's supplier.  SA Costanzo did not believe that Defendant's change in demeanor was in any way related to a medical condition.

According to Defendant, his change in demeanor was directly related to a medical condition.  Defendant testified that, once his blood sugar began to drop after he ran from the residence and vomited outside of the patrol car, he went into a hypoglycemic state.  Defendant

testified that he was not aware of his surroundings, he was confused and disoriented due to the glucose in his brain dropping, and he was operating in a "dream-like" state (which, according to Defendant, explains his calmness). Defendant further testified that, if his demeanor changed when SA Costanzo began asking about his supplier, it was due to his blood sugar rising.

Defendant testified that he remembers very few events from the time period in question. Specifically, Defendant testified that he remembers vomiting outside of the patrol car, receiving glucose paste from an officer described as a "big guy," hearing the officer inside of the patrol car make a comment about his dog, walking into his residence with SA Costanzo and Elsey, walking out of the residence, and hearing SA Costanzo or another officer say that Defendant would never see his daughter again. Defendant testified that he does not remember being read his *Miranda* rights and does not recall agreeing to answer SA Costanzo's questions.

When questioned about the substance of the Report, Defendant stated that glucose paste begins to work "immediately." Defendant further stated that a blood sugar level of 113 indicates that he was coming out of a hypoglycemic state and that his blood pressure was extremely low before that time. Defendant asserts that CFD erred by not taking/recording his blood sugar level before administering the glucose paste.

Defendant does not deny that he was read his *Miranda* rights or that he waived those rights. The issue before the Court is whether Defendant acted "knowingly, intelligently, and voluntarily" at the time he waived his *Miranda* rights and agreed to answer SA Costanzo's questions, such that Defendant's statements to SA Costanzo after he received his *Miranda* warnings are admissible in the Government's case-in-chief.

## II.     ANALYSIS

### A.  Standard of Review

It is well settled that, in *Miranda v. Arizona,* 384 U.S. 436 (1966), the United States Supreme Court established "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation."  *Daoud v. Davis*, 618 F.3d 525, 528–29 (6th Cir. 2010) (quoting *Duckworth v. Eagan,* 492 U.S. 195, 201 (1989)).  It is undisputed in the present case that Defendant was in custody at all times relevant.  It similarly is undisputed that SA Costanzo verbally advised Defendant of his *Miranda* rights before questioning him.  Although Defendant testified that he did not remember receiving those rights, he provided no evidence that would discredit SA Costanzo's testimony on this point.  The Court therefore accepts SA Costanzo's testimony and holds that Defendant was properly advised of his rights.

As stated above, the issue before the Court is waiver.  The Sixth Circuit described the standard for analyzing this issue as follows:

> [A] suspect may waive his *Miranda* rights 'provided the waiver is made voluntarily, knowingly, and intelligently.' *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602.  This inquiry has 'two distinct dimensions.' *Colorado v. Spring,* 479 U.S. 564, 573 (1987) (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).
>
>> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

7

> *Moran,* 475 U.S. at 421 (quoting *Fare v. Michael C.,* 442 U.S. 707, 725 (1979)).
>
> To be deemed knowing and intelligent, '[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring,* 479 U.S. at 574. Instead, 'we examine 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused,' ' *Garner v. Mitchell,* 557 F.3d 257, 261 (6th Cir. 2009) (alterations in original) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)), to determine 'whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,' " *id.* (alterations in original) (quoting *Spring,* 479 U.S. at 574, 107 S.Ct. 851).

*Daoud*, 618 F.3d at 528–29.

Where, as here, police officers question a suspect "without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475. The Supreme Court later clarified that the government meets that burden by proving, by a preponderance of the evidence, that the waiver was knowing, voluntary, and intelligent. *See Colorado v. Connelly*, 479 U.S. 168–69 (1986). This Court therefore proceeds to consider whether the Government satisfied its burden in this case.

### B. Discussion

The Court begins its analysis by noting that there is no evidence that SA Costanzo or Elsey did anything to coerce Defendant to waive his rights. To the contrary, SA Costanzo credibly testified that neither he nor Elsey threatened Defendant at any time, brandished their weapons once Defendant was handcuffed, used physical force, or made promises to Defendant.

8

Although Defendant testified that he remembers officers saying that he would never see his daughter again, he did not testify that this comment was made before he made the incriminating statements, or that this comment was in any way related to the questioning process. The Court therefore concludes that any comment about Defendant's daughter, if one was made, did not coerce Defendant into waiving his rights. Defendant therefore did not act involuntarily when he agreed to answer SA Costanzo's questions. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding that police coercion is necessary to establish involuntary waiver).

Defendant's argument in this case rests on his claim that, because his blood sugar dropped and caused him to experience a temporary hypoglycemic coma, he did not waive his rights with the requisite level of knowledge and comprehension. The Sixth Circuit recently rejected a similar argument. In *United States v. Collins*, 462 F. App'x 507, 509 (6th Cir. 2012), the Sixth Circuit affirmed the district court's holding that a defendant knowingly waived his *Miranda* rights, despite the defendant's claim that his diabetes caused his blood sugar to drop to the point where he was "out of his mind" at the time he agreed to answer an officer's questions. *Id.* (internal citations omitted). Because the questioning officer testified that the defendant appeared "very alert" throughout the interview, and because the defendant gave coherent responses to the officer's questions while providing conflicting testimony about his condition, the court found that government met its burden in proving a knowing and intelligent waiver. *See id.* Courts in other jurisdictions have reached the same conclusion when faced with similar facts. *See, e.g., United States v. Harrison*, No. 2:12CR193, 2013 WL 1918862, at *5 (M.D. Ala. Apr. 5, 2013) (holding that a defendant knowingly waived his *Miranda* rights when, *inter alia*, he provided coherent responses to the officers' questions, appeared "lucid and alert at all times," and did not request medical attention or ask the officers to stop questioning, despite the

9

defendant's claim that he was having a diabetes attack at the time of the interview); *United States v. Galvan-Mena*, No. 08-CR-300019, 2008 WL 5423576, at *4 (S.D. Ill. Dec. 29, 2008) (rejecting a defendant's argument that his diabetes prevented him from knowingly waiving his *Miranda* rights, when the questioning officer testified credibly that the defendant "appeared coherent and alert at all times," and the defendant responded appropriately to the officer's question and did not indicate that he needed medical attention at any time). *But see United States v. Watson*, 469 F.2d 362, 366–67 (5th Cir. 1972) (remanding the case to the district court to reexamine the question of voluntariness when the defendant informed police officers during questioning that he was going into hypoglycemic shock, the officers gave him a soda and commenced questioning shortly thereafter).

Having considered the parties' evidence and relevant caselaw, the Court finds that the Government met its burden in proving that Defendant knowingly and intelligently waived his *Miranda* rights in this case. Several points support this conclusion.

First, and similar to the facts in *Collins*, the questioning officer in this case (SA Costanzo) testified credibility that Defendant appeared calm and relaxed when he waived his *Miranda* rights and agreed to answer questions. SA Costanzo testified credibly that Defendant did not appear to be experiencing a medical issue at any time. The CFD Report, which indicates that Defendant's breath and circulation were normal and that Defendant was oriented after receiving the glucose paste, corroborates this testimony. To the extent Defendant attempted to suggest during his testimony that he waived his *Miranda* rights before receiving the glucose paste, the Court finds this testimony to be not credible.

Second, and again similar to the facts in *Collins*, it is undisputed in this case that Defendant gave coherent responses to SA Costanzo's questions. Defendant not only claimed

10

ownership of the evidence found in the residence, but he also entered the residence and demonstrated where related evidence was located.  There is no indication that a medical condition prevented Defendant from understanding and coherently responding to SA Costanzo's questions at any time.

Third, it is undisputed that Defendant did not request medical attention or indicate that he was ill during the time SA Costanzo was questioning him.  Defendant testified that he has been inflicted with diabetes for many years.  Presumably, Defendant is aware of the effects of his condition and could have informed an officer or CFD if he was going into hypoglycemic shock.  But Defendant did not do that; instead, the CFD Report reflects that Defendant "stated he was ok and just dropped due to the unexpected run."  (ECF No. 59-3, at PAGEID # 210.)  This evidence strongly suggests that Defendant was capable of knowingly and intelligently waiving his *Miranda* rights at the time he agreed to answer SA Costanzo's questions.

Finally, the Court finds that Defendant's testimony that he was in hypoglycemic shock and unable to understand and knowingly waive his *Miranda* rights suffers from several credibility issues.  Defendant testified that he does not remember being read his rights and agreeing to waive those rights.  But Defendant testified that he remembers various other interactions from the time period in question, such as walking in and out of his residence and hearing an officer make a comment about his daughter.  Defendant also testified that a blood sugar level of 113, which the CFD Report states that he had at 7:20 p.m. (which the Court finds to have taken place before Defendant waived his rights), indicates that he was coming out of a hypoglycemic state.  These facts suggest that Defendant's testimony that he could not remember waiving his rights and agreeing to answer SA Costanzo's questions is not credible.  Although the Court acknowledges that SA Costanzo's testimony regarding Defendant's change in demeanor is

11

some evidence that could support Defendant's claim, the Court finds that this evidence is outweighed by the evidence suggesting that Defendant was able to—and did—knowingly and intelligently waive his *Miranda* rights when he agreed to answer SA Costanzo's questions.

For those reasons, the Court concludes that the Government met its burden in demonstrating that Defendant knowingly and intelligently waived his *Miranda* rights. The Court accordingly denies Defendant's request to suppress the statements he made after he waived those rights.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to suppress. (ECF No. 50.)

**IT IS SO ORDERED.**

                                        **/s/ Gregory L. Frost**
                                        **GREGORY L. FROST**
                                        **UNITED STATES DISTRICT JUDGE**